**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 14, 2015[*]
Decided April 14, 2015

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 14-2091

| | |
|---|---|
| NORA E. ROBLES, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
|     *v.* | No. 12-C-1172 |
| | |
| GREEN BAY AREA PUBLIC | William C. Griesbach, |
| SCHOOL DISTRICT, | *Chief Judge*. |
|     *Defendant-Appellee*. | |

## O R D E R

Nora Robles, an uncertified teacher, was hired by the Green Bay Area Public School District to teach a bilingual kindergarten class at Howe Elementary School for one academic year (2009 to 2010). This was Robles's first year of teaching, and after just six months the school district changed her position to that of substitute teacher, citing poor performance. Robles was fired one month later. She sued under Title VII of the Civil

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Rights Act of 1964, *see* 42 U.S.C. § 2000e-2(a), claiming that the school district had discriminated against her because she is Hispanic. The district court granted summary judgment for the school district, and Robles appeals. We affirm the judgment.

The school district moved for summary judgment on the ground that the only conclusion reasonably to be drawn from the uncontested evidence is that Robles first was relegated to a substitute-teaching position and then fired not because she is Hispanic but because she had failed to meet the school district's legitimate performance expectations. As evidence, the school district submitted (1) declarations from the principal of Howe Elementary, the district's assistant superintendent of human resources, the associate director of the district's English Language Learner Program, and a principal from a neighboring school who had been consulted about Robles's job performance; (2) notes taken by these declarants while meeting with Robles and observing her in the classroom; (3) excerpts from Robles's deposition; and (4) employment agreements signed by Robles.

The school district's evidence describes problems with Robles from the get-go. The school principal states in her declaration that she had received complaints early in the year from teachers and staff that Robles was violating school policy by leaving the building without signing out, that she was late to parent-teacher conferences, that she was bringing her children to the school during working hours, and that she was walking around barefoot in the halls. Over the following months, the principal along with the associate director of the language program and the principal of the neighboring school observed Robles's classroom performance at various times and expressed concerns to her during meetings. All three administrators agreed that Robles's performance was unsatisfactory. The associate director's declaration, for example, describes Robles's classroom as "chaotic." And the declarations of both principals state that Robles appeared to have no lesson plans. In the opinion of the second principal—who had nine years' experience teaching bilingual classes and regularly provided support to bilingual educators in the school district—Robles's "performance was still lacking" five months into the school year, as she had "poor classroom management and poor lesson planning and instruction."

The assistant superintendent of human resources explains in his declaration that Robles, because of her poor performance, was reassigned to the position of substitute teacher, though retaining the same salary. If on a particular day no assignment as a substitute teacher was available, Robles was to report to the school district's offices to be

given other tasks. The week after her reassignment, Robles violated school district policy by missing work two days in a row without reporting her absences. When Robles returned to work, the assistant superintendent says, they met to discuss the absences, which Robles attributed to illness. The assistant superintendent did not believe her (a colleague had told him that Robles was visiting her union's lawyer). After this, the declaration continues, Robles left the meeting during a break and never returned. Two weeks later, the assistant superintendent notified Robles in writing that she was being fired for, among other reasons, "failing to report an absence," "lying during an employment investigation," and leaving the meeting during working hours without permission.

Robles conceded that she lacks direct evidence of discrimination but maintained that her evidence establishes a prima facie case of employment discrimination under the indirect method of proof recognized in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). But the only evidence submitted by Robles—who was represented by a lawyer throughout the proceedings in district court—is her own declaration. In that declaration Robles disagrees with the school district's contention that her performance as a teacher was subpar. Teachers who are not Hispanic, she insists, were scrutinized less and, unlike her, permitted to roam the school barefoot and bring their children to work. Robles did not dispute, however, the principal's sworn statement that she was unaware of similar transgressions by other teachers. Nor did Robles contend that the school district had relegated her to substitute teaching or fired her because she had walked around barefoot or because she had brought her kids to school. Based on her declaration alone, Robles insisted that the employment expectations set by the school district were not legitimate. She also argued that the declarations submitted by the school district should be discounted as "self-serving."

In granting summary judgment for the defendant, the district judge reasoned that Robles had not made a prima facie case of discrimination because she lacks evidence that she was satisfying the school district's legitimate job expectations. The judge explained that maintaining order in the classroom and executing lesson plans are legitimate expectations and noted that "there was unanimity among the observers that Robles was unable or unwilling" to improve her performance to meet these expectations. Moreover, the judge continued, the observers—particularly the second principal, who is Hispanic—could not "be expected to have any kind of anti-Hispanic animus."

On appeal Robles (now pro se) repeats that, unlike her, other teachers who are not Hispanic also brought their children to work and walked barefoot around the school. These teachers were not disciplined, which in Robles's view shows that the school district discriminated against her because she is Hispanic. This contention is a red herring. Robles was not removed from the classroom or fired for walking barefoot or for bringing her children to work. Rather, the school district presented undisputed evidence that she was consigned to substitute teaching because her performance—her lesson planning and classroom management—was not in line with the school district's legitimate expectations.

Robles's only reply to the evidence of her performance issues is that she "worked to the best of her abilities to comply with the . . . school district's expectations." We grant that she did, but Robles's opinion that her best efforts should have satisfied her employer does not get her past summary judgment. *See Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 897 (7th Cir. 2015); *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006). And Robles offered no evidence from which a jury could infer that the school district demanded that Hispanic teachers perform better in the classroom than other teachers. *See Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 394 (7th Cir. 2010); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 331 (7th Cir. 2002).

In closing, we comment briefly on the district judge's statement that the Hispanic principal of the neighboring school could not "be expected to have any kind of anti-Hispanic animus." One might read this as a suggestion that it would be impossible for the principal to discriminate against Robles because they are both Hispanic—a suggestion that is incorrect. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998); *Williams v. Wendler*, 530 F.3d 584, 587 (7th Cir. 2008); *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 261–62 (3d Cir. 2001). We do not, however, read the judge's statement to be implying the impossibility of discrimination among members of the same group. And in any event, the judge was correct to conclude that there is no evidence that the school district's adverse employment actions against Robles were motivated by her being Hispanic.

AFFIRMED.